UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AJMAL MEHDI,<br>          Plaintiff, | :<br>:<br>: |
| v. | :    3:08-cv-1531 (WWE) |
| UNITED STATES OF AMERICA,<br>          Defendant. | :<br>:<br>: |

**MEMORANDUM OF DECISION ON
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Ajmal Mehdi brings this action alleging that he suffered emotional distress when his application for naturalization was unreasonably delayed. Now pending before the Court is defendant's motion for summary judgment (Doc. #29). For the following reasons, defendant's motion will be granted.

The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted briefs, a statement of facts and supporting exhibits, which reflect the following factual background.

The United States Citizenship and Immigration Services ("CIS") conducts several forms of security and background checks when a lawful permanent resident alien applies for naturalization. These checks are meant to ensure that the alien is eligible for naturalization and that he is not a risk to national security or public safety. The checks currently include (1) a Federal Bureau of Investigation fingerprint check for relevant criminal history; (2) a check against the Department of Homeland Security-managed Interagency Border Inspection System ("IBIS") that contains records and

1

"watch list" information from more than twenty federal law enforcement and intelligence agencies; and (3) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS check.  IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity.  The application for naturalization cannot be granted until all the relevant background checks have been completed and resolved.

Background and security checks involve name checks as well as fingerprint checks because name checks often reveal more derogatory information than would fingerprint checks alone.   FBI fingerprint checks frequently do not reveal relevant derogatory information, particularly when the underlying derogatory event did not result in an arrest or criminal conviction.

If a background or security check reveals derogatory information about an application, CIS works with other divisions within DHS to obtain all available information on the derogatory record.  If necessary, DHS may place the alien in immigration proceedings to remove him from the United States.

Prior to September 11, 2001, the FBI processed approximately 2.5 million name check requests per year.  For fiscal year 2007, the FBI processed more than 4 million name checks.  A significant percentage of the name checks over the last few years have been submitted by CIS.[1]

---

[1]   In fiscal year 2003, 64% (approximately 3,929,000) of the total incoming name checks were submitted by CIS; in fiscal year 2004, 46% (1,727,000) of the total incoming name checks were submitted by CIS; in fiscal year 2005, 45% (1,512,000) of the total incoming name checks were submitted by CIS; in

In December 2002 and January 2003, based on a joint agreement between the FBI and the former INS, INS resubmitted 2.7 million name check requests to the FBI for background investigations of all individuals with then-pending applications for immigration benefits for which the Immigration and Nationality Act required background investigations. A review of the resubmitted requests indicated that the FBI may have had information relating to approximately 440,000 of the requests. The FBI ultimately completed those 440,000 requests by the spring of 2008.

Several factors contribute to delays in the processing of name check requests. These factors include (1) the volume of incoming name check requests; (2) the number of matches of a submitted name to a name in an FBI record; (3) the processing of common names, including the various combinations involved in switching the order of first, middle and last names; (4) the accessibility of the FBI records that are necessary to review; and (5) other expedited name check requests that interfere with the normal processing of regular requests.

Plaintiff Ajmal Mehdi is a Pakistani national. At the time of the events relevant to this litigation, he had been a lawful permanent resident of the United States for at least three continuous years and had been the spouse of a United States citizen for at least three years. He had resided in the State of Connecticut for at least three years. Plaintiff contends he had been a person of good moral character within the meaning of 8 U.S.C. § 1427.

---

fiscal year 2006, 45% (1,633,000) of the total incoming name checks were submitted by CIS; and in fiscal year 2007, 52% (2,113,000) of the total incoming name checks were submitted by CIS.

Plaintiff filed an N-400 application for naturalization on September 18, 2003. CIS initiated an FBI name check request on his application on October 10, 2003. FBI fingerprint checks of plaintiff were initiated on November 15, 2003 and again on August 18, 2006. CIS received the results of the fingerprint checks from the FBI on November 18, 2003 and August 21, 2006, respectively. IBIS checks were initiated on plaintiff and responses were received on June 30, 2004 and November 1, 2006. Plaintiff appeared for an initial interview on June 30, 2004.

His application was continued because of a request for evidence by CIS and the pending FBI name check. Plaintiff submitted the requested evidence to CIS, and it was reviewed CIS on July 16, 2004. On October 12, 2004, CIS notified plaintiff by letter that his application was still pending the name check. On December 3, 2004, plaintiff was advised his naturalization application was pending completion of his background check.

Under CIS policy, FBI fingerprint checks and IBIS checks need to be valid at the time of approval of an application and at the time of naturalization. FBI fingerprint checks remain current for fifteen months, while IBIS checks remain current for six months. FBI fingerprint checks and IBIS checks were therefore reinitiated in 2006. A second expedited manual FBI name check request was submitted on October 23, 2006. CIS received the results on October 25, 2006.

On October 24, 2006, plaintiff brought an action before the Court against CIS seeking to compel adjudication of his application.[2] In an affidavit attached to his first complaint, plaintiff averred that he had made approximately seventy email, telephone

---

[2]    Plaintiff's previous case was Mehdi v. United States Dep't of Homeland Security, 3:06-cv-1699 (JCH).

and written inquiries with CIS in the previous two years and that each inquiry resulted in notification that the background checks were still pending.

The adjudication of plaintiff's application was completed on November 15, 2006. He appeared for a second interview to update his application on that same date. His application was approved and he was scheduled for an Oath of Allegiance ceremony. Plaintiff was sworn in as a naturalized citizen on December 1, 2006.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v.

County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Defendant United States moves for summary judgment on the grounds that its actions were reasonable in light of the procedures that the CIS must take prior to approving an application for naturalization.  Further, it asserts that its conduct did not create a risk of causing plaintiff harm.

Plaintiff brings this action under the Federal Tort Claims Act.  Under the FTCA, the Court applies the substantive law of state in which the alleged tort occurred.  See Carter v. United States, 333 F.3d 791, 793 (7th Cir. 2003); see also 28 U.S.C. § 1346(b); 28 U.S.C. § 2674; Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994).

To establish a claim for negligent infliction of emotional distress under Connecticut law, plaintiff must demonstrate that (1) defendant's conduct created an unreasonable risk of causing plaintiff emotional distress; (2) plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) defendant's conduct was the cause of plaintiff's distress.  Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003).  Alternatively, a plaintiff can prove a negligent infliction claim by demonstrating that "the defendant should have realized that

6

its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." McNamara v. Tournament Players Club of Connecticut, Inc., 270 Conn. 179, 197 (2004).

"[D]elay is a natural concomitant of our administrative bureaucracy." Isaacs v. Bowen, 865 F.2d 468 (2d Cir. 1989). Such delays, however, do not necessarily lead to valid claims of negligent infliction of emotional distress. Where the government's processes are reasonable, even if they are slow, there can be no such claim.

The Courts' decisions in Lavoie v. United States, 2009 U.S. Dist. LEXIS 37622 (D. Conn. May 4, 2009), aff'd, 2010 U.S. App. LEXIS 985 (2d Cir. Jan. 19, 2010) are relevant to this case. There, the Court ruled that the government did not negligently inflict emotional distress upon the plaintiff even where it delayed a decision on payment to the plaintiff under the Energy Employees Occupational Illness Compensation Program Act for seven years. The Court found that the government's conduct was not tortious because the claims processing period was "entirely reasonable considering the complexity and size of the new compensation program." Id., 2009 U.S. Dist. LEXIS 37622 at *18-19. The Court of Appeals observed that the government's sending updates to plaintiff undermined his claim.

Both decisions in Lavoie are instructive to the instant case because many of the facts that the Courts relied upon in Lavoie are present here. Plaintiff here was kept updated on the status of his application and was told in response to each inquiry that it remained under review. In both cases, the evidence shows that the government program is large and complex. Plaintiff does not dispute the government's description of CIS's burden in processing naturalization applications with the FBI. In light of the

7

severe workload and the size of CIS, the delay was reasonable.

Plaintiff argues that the delay was unreasonable because he finds the government's argument "ludicrous" that FBI policy mandates that fingerprint checks remain current only for fifteen months. Plaintiff, however, cites no evidence supporting this statement. The government's assertion is unchallenged by competent evidence and will be accepted. See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.").

Plaintiff cites several cases in support of his position that the delay in his case was unreasonable. Those cases, however, pertain to Fourteenth Amendment claims alleging deprivation of a property right without a hearing or adequate due process protections. See Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010); Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009); Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002). In those three cases, the Court of Appeals addressed whether the plaintiff's rights were violated when his property rights were infringed upon. This case differs because the plaintiff here sought to require the government to act. This case is not a Fourteenth Amendment case and therefore those cases are inapposite to the instant facts.

Construing the facts in factor of plaintiff as the nonmoving party, the Court concludes that a reasonable jury could not find the government's actions have created an unreasonable risk of emotional distress. Summary judgment is appropriate in this matter.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion for Summary Judgment (Doc. #29).  The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 23rd day of June, 2010.

                                                    /s/
                                       Warren W. Eginton
                                       Senior United States District Judge